COMMONWEALTH *vs.* SCOTT D. PACE. April 29, 1986. *Practice, Criminal,* Grand jury proceedings, Dismissal. *Grand Jury. Rape. Kidnapping. Unnatural and Lascivious Act.*

The question we must decide is whether a Superior Court judge erred in denying a pretrial motion, based upon *Commonwealth* v. *O'Dell,* 392 Mass. 445 (1984), to dismiss three indictments. That case held that the integrity of grand jury proceedings may be impaired to such an extent by the presentation of distorted evidence that an indictment based on that evidence must be dismissed. Compare *Commonwealth* v. *Connor,* 392 Mass. 838, 853-855 (1984); *Commonwealth* v. *McGahee,* 393 Mass. 743, 745-748 (1985); *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 612-614 (1981); *Commonwealth* v. *Francil,* 15 Mass. App. Ct. 35, 38-39 (1982); *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. 789, 791-795 (1985).

The defendant was indicted on charges of aggravated rape, kidnapping, and committing unnatural and lascivious acts. The only witness to testify before the grand jury was Paul Connell, the Plymouth police officer who had conducted an investigation in the case. He first read to the grand jurors the report of another police officer who had interviewed the victim. The victim had related to that officer in some detail what had occurred during the early morning of May 5, 1982, after two men, who referred to each other as "Scott" and "Deano," forced her into a station wagon. Officer Connell testified that the defendant, whose first name is "Scott," fit the general description the victim had given of the culprit who had been referred to as "Scott" during the incident. Officer Connell also testified that the victim had identified one Dean LeCain as the other culprit. He also stated that a toll call had been made from LeCain's telephone to the defendant's home in Rockland and that the defendant is the only "Scott" to whom such a toll call had been made during the relevant period. That information led

Connell, according to his testimony, to the defendant's residence in Rockland, where a vehicle was found which fit the description given by the victim. Connell stated that he photographed the vehicle and that later the victim identified the vehicle in the photograph as the one in which she had been abducted on May 5, 1982. Just before Officer Connell concluded his testimony, a juror asked him: "Did [the victim] identify the second defendant there, Scott Pace, as the person involved also?" Officer Connell answered, "No, she didn't. No." The juror asked, "Why not?" Officer Connell answered, "The picture that we had was an old picture." Later, in his trial testimony, Officer Connell revealed that prior to the grand jury proceedings he had shown the victim a photographic array and that she had selected a photograph of an individual other than the defendant, saying "that looks like him." Connell did not record whose photograph the victim had identified. An old photograph of the defendant was in the array.

The prosecutor did not ask the witness any question which was designed to suggest to the grand jury that the victim would be able to identify the defendant or that the case against the defendant was based on anything other than circumstantial evidence. There is no indication that Officer Connell's answer to the question asked spontaneously by one grand juror was anything but an honest statement of his opinion as to the reason the victim had failed to identify the defendant. Nevertheless, we agree with the defendant that the failure of Officer Connell or the prosecutor to inform the grand jurors that the victim had picked out the photograph of someone other than the defendant, where identification was emerging as the key issue in the case against this defendant, was to some degree misleading. The prosecutor, perhaps caught off guard by the grand juror's question, ought to have asked the witness a follow-up question to set the record straight.

The issue is whether the omission was likely to "have affected the grand jury's decision to indict." See *Commonwealth* v. *McGahee,* 393 Mass. at 747. See also *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. at 793. The prosecutor's case before the grand jury linking the defendant to the crimes was based upon some fairly compelling circumstances: the similarity between the names by which the culprits referred to each other and the first name of the defendant and the first name of LeCain, the individual the victim was able to identify; the telephone call showing a connection between LeCain and the defendant; the connection between the defendant and the vehicle used in the crime; and the fact that the defendant fit the general description of the "Scott" involved in the crime. (In contrast, the case against the defendant in *O'Dell* rested heavily on a statement which was reported to the grand jury in a misleading manner.) We think it unlikely that knowledge of the information withheld — that the victim on one occasion almost eight months after the incident tentatively selected a photograph of someone other than the defendant — would have influenced the decision of the grand jury to indict the defendant. See *Commonwealth* v. *McGuire,* 19 Mass. App. Ct. 1013 (1985).

The defendant contends that there was a second significant distortion of the evidence presented to the grand jurors. The jurors were not told that the owner of the vehicle in question, which was found at the defendant's home, was not the defendant but the female with whom he resided. We regard the fact of legal ownership for these purposes as insignificant. As the vehicle was available for the defendant's use, and as the actual owner could not reasonably have been viewed as a potential suspect, the grand jury were not unfairly misled.

Contrary to the contention of the defendant, the evidence presented at trial was sufficient to overcome his motion for a required finding of not guilty. The evidence was of similar import to that presented to the grand jury. Although the Commonwealth did not introduce evidence concerning the toll call, there was additional evidence presented which indicated that a close association existed between the defendant and LeCain. And further: the "Scott" who was involved in the crime was wearing a cross on a gold chain which broke when the victim pulled it; "Scott" put the broken chain in his pocket; the defendant was in the habit of wearing a cross on a gold chain; a broken gold chain, which looked like the gold chain worn by "Scott," was given to the police by the woman with whom Scott had been living. The jury could reasonably infer from the evidence, although circumstantial, that the defendant was one of the two individuals who had committed the crimes charged in the indictments.

*Judgments affirmed.*

*Elizabeth H. Scott,* Committee for Public Counsel Services, for the defendant.

*John P. Corbett,* Assistant District Attorney, for the Commonwealth.