COMMONWEALTH vs. ERNEST J. BOBILIN, JR.

No. 87-915.

Franklin. January 15, 1988. — February 22, 1988.

Present: PERRETTA, KAPLAN, & DREBEN, JJ.

*Rape. Practice, Criminal,* Grand jury proceeding, Presence of defendant.
*Evidence,* Grand jury proceeding, Cross-examination. *Witness,* Credibil-
ity. *Jury and Jurors.*

The integrity of a grand jury proceeding was not impaired by the Common-
wealth's failure to present evidence, of which it should have been aware,
that the complaining witness on a charge of rape had smoked marihuana
before submitting to sexual intercourse with the defendant, where the
omitted information did not undermine the Commonwealth's presentation
of the case, which was based upon the witness's having submitted to
the defendant under threat of physical harm, and where the omission,
in the circumstances, did not indicate a prosecutorial design to suppress
evidence casting doubt on the witness's testimony that she had not
consented to intercourse with the defendant. [411-413]

The integrity of a grand jury proceeding was not impaired by the Common-
wealth's failure to present to the grand jury a defendant's exculpatory
statement to police. [413]

At a rape trial no error appeared in the judge's rulings as to the procedure
and scope of the defendant's cross-examination. [413-414]

At a rape trial, the defendant was not entitled to elicit testimony from his own
witness for the purpose of enhancing her credibility, where she had not
been impeached. [414]

A judge's colloquies with two seated jurors before the commencement of a
criminal trial concerning their attire in the courtroom created no substan-
tial risk of a miscarriage of justice by reason of the absence of the
defendant and his attorney, where a transcript of the colloquies was later
read to both counsel, their comments were received, and no objection
was made either to the procedure followed or to the jurors' remaining
empanelled. [414-415]

INDICTMENT found and returned in the Superior Court De-
partment on October 20, 1986.

A motion to dismiss was heard by *Elizabeth A. Porada*, J., and the case was tried before *Raymond R. Cross*, J.

*John R. Campbell* for the defendant.

*Charles K. Stephenson*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. The evidence in this case follows an unfortunately familiar pattern. The man, some time after the breakdown of the intimate relationship, appears at the woman's residence, where he is no longer welcome, professes continuing love for her and a passion for her body, and, on being refused, forces himself upon her. When charged with rape, the man claims that the woman reverted to her previous complaisance and consented to the intercourse. See, e.g., *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 164-165 (1983).

1. In the present case, no space need be wasted on a description of the bulk of the evidence at trial. Contrary to the defendant's motion at trial and his contention on this appeal, the jury could well have found beyond a reasonable doubt that the woman did not consent, that she submitted to rape by repeated vaginal penetrations under threat of physical harm to herself and her children, and, in addition, suffered an assault with intent to commit rape by anal intercourse.[1] The last scenes in a prolonged encounter in the early morning hours found the woman seizing an opportunity to escape the house; fleeing, naked, across the street in an attempt to reach a neighbor, and being narrowly pursued by the man, also naked, who, as the neighbor responded, turned around and fled.

2. The defendant reverts to his pretrial motion to dismiss the indictment, and contends that the judge erred in denying it. We have a transcript of the grand jury proceeding. The complaining witness — we shall call her Alice — gave an

---

[1] With the aid of particulars furnished by the Commonwealth, we can say the defendant was convicted of a count of rape by natural intercourse and a count of assault with intent to commit unnatural (anal) intercourse. He was acquitted of a count of rape by unnatural (oral) intercourse.

account of the entire episode[2] upon which, it is agreed, indictments properly could be based.[3]

(a) Alice, however, did not testify to a matter of which the Commonwealth, in possession of Alice's pretrial statement, should have been aware, namely, that she had smoked marihuana just before first submitting to the defendant. The defendant argues that this evidence would have tended to indicate consent on Alice's part, and its elision therefore was harmful to the accused. Alice would say (so she testified at trial) that her taking the drug, as it was her custom to do before intercourse, was "to ease it on me" in what was now an unpleasant transaction, and that it did not evince any willingness on her part. Here it may be noted that Alice did tell the grand jury that at a later point she reached down and stimulated herself while the defendant was attempting vaginal intercourse, and brought herself to an orgasm; this also had been customary with her. She did this now, she said, in order to answer to the defendant's threatening complaint that she was not "cooperating," and also in order, by cooperating, to bring the defendant to a climax so that he might finally stop his unwanted advances. Thus the grand jury did receive some evidence which might raise a speculation about consent, but nevertheless indicted in light of the whole story. The fact that this evidence was offered suggests that the prosecutor was not trying consciously to suppress the possibility that there had been consent.

---

[2] There was also testimony by the neighbor.

The evidence here was direct rather than hearsay. That direct evidence is preferred in grand jury proceedings should again be stressed. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655-656 (1979); *Commonwealth* v. *Mayfield*, 398 Mass. 615, 619-620 (1986).

[3] To support an indictment, the evidence must attain the level required to support an arrest or search warrant. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655-656 (1979); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982); *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). The question whether a stiffer standard — that for binding over, *Myers* v. *Commonwealth*, 363 Mass. 843, 850 (1973) — should apply, was left open in *Commonwealth* v. *McCarthy, supra* at 162 n.5, but answered in the negative in *Commonwealth* v. *O'Dell, supra* at 450-452, although the court observed that the divergence might be thought "anomalous."

It would have been better to elicit the marihuana incident, but in the circumstances its omission did not "impair the integrity" of the grand jury.[4] The Commonwealth, having presented the affirmative case, was not obliged to furnish all available items of exculpatory evidence. Such items may not be withheld where they would have the effect of undermining important proofs that have been put to the grand jury. See *Commonwealth* v. *Connor*, 392 Mass. 838, 854 (1984); *Commonwealth* v. *McGahee*, 393 Mass. 743, 746 (1985); *Commonwealth* v. *Mayfield*, 398 Mass. 615, 620-621 (1986). See also *Commonwealth* v. *McGuire*, 19 Mass. App. Ct. 1013 (1985). That was not the situation here. Nor, as already indicated, can it be suggested that the prosecutor was contriving to suppress evidence with a purpose prepense to secure an indictment. Compare *Commonwealth* v. *Mayfield*, 398 Mass. at 620; *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 793 (1985); *Commonwealth* v. *Pace*, 22 Mass. App. Ct. 916 (1986).

(b) The grand jury were not told about the defendant's protestation, when he was interrogated by the police, that Alice had consented to intercourse. (He explained her breaking out of the house as a bad — and by some three hours delayed — reaction to the marihuana.) It may be enough to say that an accused has no right to make a voluntary appearance before the grand jury to testify to his innocence. In *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984), the fault was not in a failure to offer the accused's exculpatory statement, but in an unfair distortion of it to make it appear that he was admitting guilt. *Id.* at 449. At all events, the grand jury almost certainly assumed that the accused would maintain that Alice consented and would so testify.

3.(a) Brenda (pseudonym), Alice's fourteen year old daughter, gave testimony for the Commonwealth at trial about what occurred when the defendant was at Alice's door asking to come in. In an apparent effort to show inconsistency between

---

[4] The phrase regularly used in discussing whether an indictment has been so infected as to require dismissal. See, e.g., *Commonwealth* v. *Salman*, 387 Mass. 160, 166 (1982).

that testimony and a written statement Brenda had given the police, defense counsel on cross-examination simply asked her to read the statement to the judge and jury. This procedure was flawed, see Hughes, Evidence § 234 (1961), and the judge sustained an objection. Counsel did not improve his method or make an offer of proof. In fact the circumstances of the defendant's entering the house were well explored otherwise.

(b) Defense counsel sought to adduce on Brenda's cross-examination that she was present on an occasion when (according to an offer of proof) Alice, under the influence of narcotics and alcohol, attempted suicide and the defendant restrained her. With the time of the alleged incident not established, and any material connection with the charges at trial not shown, the judge in his discretion declined to allow this interrogation to go on. There was no error. See Liacos, Massachusetts Evidence 408-410 (5th ed. 1981).

(c) The defendant's mother, a witness for the defense, testified that sometime in April, 1986, Alice had visited her; as a result, she said, she called the police. Objection was sustained to the next question, what did she tell the police. After a colloquy at sidebar, in which counsel said he was trying to elicit that Alice threatened to "see the defendant in jail," counsel asked what Alice said to the witness, and got just the answer he had foretold. He did not return to the question about the substance of the police call. If the question was permissible at all, this was the proper time to ask it. Counsel now argues that the answer (whose probable content he did not describe) would have strengthened the mother's credibility; but she had not been impeached. Cf. Liacos, supra, at 165-166.

4. Apparently it was after the jury were selected that they were told about the decorum the judge expected: men were expected to wear neckties. Before the actual commencement of trial, one juror, tieless, came before the judge and there was a rather heated exchange, with the juror saying he had not worn a tie since 1960, the requirement was ridiculous, and so on, and the judge insisting on his rule and threatening contempt. Then it appeared there was a second tieless juror who, however, was able to say that he developed a rash when he

wore a tie. In the end, peace prevailed, and the jurors were told they could do as they pleased about a tie. The judge's conversation with the jurors took place without counsel on either side or the defendant's being present, but a record had been made and was read to counsel. Defense counsel expressed his personal agreement with the judge about having a dress code, and vetoed a suggestion that the recalcitrant juror be discharged by agreement. But the defense argues on appeal that there was a risk of a miscarriage of justice in the judge's conversing with the jurors without attendance of the defendant and his counsel.

When a judge conducts an inquiry about a consequential matter, such as alleged serious misconduct of jurors, there is a requirement, deriving from the constitutional right of confrontation, that the defendant and his counsel be present. See *Commonwealth* v. *Robichaud*, 358 Mass. 300, 301-303 (1970); *Commonwealth* v. *Connor*, 392 Mass. 838, 843 n.1 (1984); *Commonwealth* v. *Doucette*, 22 Mass. App. Ct. 659, 663-664 (1986), *S.C.*, 400 Mass. 1005 (1987). A minor administrative matter may call for less formality, as recognized in *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 399 n.3 (1975), and here we have the actual colloquies read out to counsel, their comments received, the status quo ante restored, no objection taken to the procedure or to the jurors' remaining empanelled, and the defendant unable to show how he was or could have been injured by the affair.

This is not an occasion for trying to mark out how far a judge's power of control of the amenities of his or her courtroom goes, or what remedies may be available when limits are exceeded. It is advisable to have the defendant and counsel on hand when judge and juror appear to be colliding, and (as the judge here finally recognized) to put diplomacy ahead of threats of contempt.

*Judgments affirmed.*