COMMONWEALTH vs. EDWARD TAVARES, JR.

No. 88-P-1306.

Bristol. June 20, 1989. — August 1, 1989.

Present: BROWN, DREBEN, & FINE, JJ.

*Practice, Criminal,* Grand jury proceeding, Indictment, Conduct of prosecutor, Argument by prosecutor. *Rape. Grand Jury. Evidence,* Grand jury proceeding. *Due Process of Law*, Prosecutorial vindictiveness.

On his appeal from convictions of assault with intent to kill and aggravated rape, a defendant did not demonstrate that the integrity of proceedings of the grand jury which returned two of the indictments against him had been impaired by the withholding of certain of the victim's statements from consideration by the grand jury. [638-640]

In a criminal case in which the defendant was indicted for assault with intent to murder and assault and battery and, five months later, based on the same incident, for rape, no ground for dismissal of the later indictment, by reason of prosecutorial misconduct, violation of a constitutional right or alleged prejudice from the delay, was demonstrated on the record. [641-642]

Sufficient evidence was presented at a criminal trial to warrant convictions of the offenses charged. [642]

At a criminal trial any error in the prosecutor's referring in closing argument to the defendant's failure to produce the alibi witnesses mentioned by defense counsel in his opening was corrected by the judge's instructions to the jury. [642-643]

At a criminal trial remarks by the prosecutor in closing were permissible to rebut an argument of defense counsel [643-644], and there was no error in the prosecutor's references to the severity of the victim's injuries [644].

INDICTMENTS found and returned in the Superior Court Department, two on June 28, 1983, and one on November 29, 1983.

The cases were tried before *John D. Sheehan,* J.

*Carole A. Z. Root* for the defendant.

*Cynthia A. Vincent,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. About 4:00 A.M. on May 26, 1983, a truck driver on his way to work in Acushnet saw a young woman staggering in the middle of New Plainville Road. Her clothes were wet and torn; her shirt was undone; her face was bloody; "she was really beat up"; she had difficulty speaking. The driver placed her in his truck (she was unable to climb in on her own) and brought her to a New Bedford police station. The victim was then taken to the emergency room of St. Luke's hospital. Because of the extent of her injuries, she was later transferred to the Massachusetts Eye and Ear Infirmary.

In March, 1987, the defendant was convicted, on indictments returned in June 1983, of assault and battery, of assault with intent to kill, and, on an indictment returned in November, 1983, of aggravated rape. He makes the following arguments on appeal: (1) because certain exculpatory evidence was not presented to the grand jury, the integrity of those proceedings was impaired; (2) the decision of the prosecutor to charge the defendant, after he had defaulted, with the additional charge of aggravated rape was vindictive and a misuse of the grand jury; (3) there was insufficient evidence to sustain the convictions; and (4) there was prosecutorial misconduct in closing argument. We affirm.

1. *Integrity of the grand jury proceedings.* The defendant claims that the June, 1983 grand jury proceedings were impaired by the withholding of "relevant, possibly exculpatory evidence." He claims the following matters were not brought to the attention of the grand jury: the victim's fresh complaint made to an emergency medical technician (EMT) on the way to St. Luke's Hospital; confused handwritten early notes of the victim; and the fact that the victim had been drinking.

The first difficulty with the defendant's argument is that it is made for the first time on appeal. As noted in *Commonwealth v. Mayfield*, 398 Mass. 615, 622-623 n.4 (1986), "[i]t is inherent in Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), that each ground for a motion to dismiss must be presented to the trial [or motion] judge, and any ground then known to the defendant and not presented is deemed waived."

Considered on the standard of a substantial risk of a miscarriage of justice, we find the claims without merit. To sustain an argument that the integrity of the grand jury has been impaired, the defendant must show: (1) that false or deceptive evidence was given to the grand jury "knowingly" or recklessly, "for the purpose of obtaining an indictment" and (2) "that the presentation of the false or deceptive evidence probably influenced the grand jury's determination to hand up an indictment." *Id.* at 621. *Commonwealth* v. *Pond*, 24 Mass. App. Ct. 546, 551 (1987). *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. 410, 413 (1988).

Officer Larson was the only witness to testify before the grand jury in June, 1983. He related how the victim was found by the truck driver at four in the morning, covered with blood, mud and dirt. Her blouse and bra were ripped, and her pants were partly undone. When brought to the station, "she couldn't remember a thing" and was immediately taken to the hospital.

Later that morning, Officer Larson and another police officer went to see her in the hospital. Her jaw and cheek bones were fractured; all her bottom teeth were gone; she had a tube in her mouth; and she could not talk. She could see with one eye. Her only method of communication was to write notes. By means of such notes she told the officers to go to a certain bar where the manager would identify the man she had been with. She described her assailant as white and Portuguese. The officers went to the bar where they learned that the victim had been with Eddie Tavares, that the victim and Eddie had left together about midnight, and that Eddie drove a small red pickup truck.

Informed that the victim was to be transferred to the Massachusetts Eye and Ear Infirmary, the officers again visited the hospital where the victim identified a picture of the defendant. When asked why she was beaten, she wrote, "I wouldn't sleep with him." She also wrote, "In the mud, in a little red truck." She could not remember if she was sexually assaulted or not. The police had sent vaginal smears to a laboratory but the results had not yet been received. The victim remembered being choked and must have passed out. She also remembered

having been drinking. She didn't know how she reached the station. Officer Larson testified that the defendant was arrested two days later after being found, hiding, in an attic at the house of another woman.

What was not told to the grand jury was that, on the way to St Luke's Hospital, the victim had told an EMT that she had been hitchhiking, that an unidentified male had picked her up, and that he had hit and raped her.

In view of the victim's dazed state when she was brought into the station (she then "couldn't remember a thing"), and her inability, at the hospital, to remember how she had reached the police station, the police officers and the assistant district attorney could reasonably have believed that the victim's statements to the EMT were confused and probably inaccurate. There was no showing that the prosecutor was contriving to suppress these data for the purpose of obtaining an indictment. *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. at 413. While it would have been preferable to elicit the conversation with the EMT, "[p]rosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury." *Commonwealth* v. *McGahee*, 393 Mass. 743, 746 (1985). *Commonwealth* v. *Mayfield*, 398 Mass. at 620-621. *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. at 413. The grand jury, too, in all likelihood, would have considered the EMT's account inconclusive in view of the victim's confused state; their decision to indict would probably not have been affected by the victim's inconsistent story.

The defendant is simply wrong when he argues the grand jury were not told that the victim had been drinking. That evidence was clearly before them.

The grand jury were not informed of one of the victim's notes. When asked at St. Luke's Hospital whether she knew who the person was, she wrote, "I think so. Eddie." This omission seems inconsequential. Instead of showing an "apparent expression of doubt on the part of the victim," as the defendant argues, the note implicates the defendant. In any event, the defendant has in no way met the twofold requirement of *Mayfield*, 398 Mass. at 621, to sustain a showing of impairment of the grand jury proceedings.

2. *November indictment on aggravated rape.* On November 15, 1983, the defendant was scheduled for trial on the June indictments. He defaulted. On November 29, 1983, the Commonwealth presented additional facts to the grand jury consisting of: (a) direct testimony of the victim that Tavares wanted her to sleep with him, that he slapped her and choked her and that she woke up in the woods without her pants or her pantyhose; and (b) testimony of a New Bedford policeman who read from a "rape protocol" performed at the Massachusetts General Hospital. The examination showed that sperm, as well as two small foreign bodies, were found in the victim's vagina.

Based on *Commonwealth* v. *Liebman*, 379 Mass. 671, 677 (1980), the defendant urges that the June grand jury proceedings were misused for purposes of discovery. There is nothing in the record to support this contention.

His claim of prosecutorial vindictiveness, based on *Blackledge* v. *Perry*, 417 U.S. 21, 27 (1974), is also without merit. It is not clear from the record that the default prompted the additional charges. The prosecutor was of opinion that the rape kit results were not known to his office prior to the first scheduled trial. "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance." *United States* v. *Goodwin*, 457 U.S. 368, 381 (1982). In the pretrial setting, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness . . . ." *Ibid.* In contrast, after a trial, it is much more probable that the State has assessed all the information against an accused so that a change in charging decision after the trial is more likely to be improperly motivated. *Ibid.*

Moreover, even if the defendant's default was a factor motivating the prosecutor, such action would not be an adequate ground for dismissing the indictment. In *Goodwin*, at 371 n. 2, one of five reasons given by the prosecutor for the additional indictment was that the "respondent had failed to appear for trial as originally scheduled." It is implicit in the majority

opinion, and explicit in Justice Blackmun's concurring opinion at 386, that the explanations given by the prosecutor for the additional indictment were satisfactory. A district attorney "has wide discretion, in the absence of any showing of misconduct or violation of constitutional right, to elect to proceed with a matter." *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 783 (1978). No misconduct or constitutional violation has been shown.[1]

The defendant's claims of prejudice by delay in the November indictment must also be discounted. His defense was alibi. Since the rape charges arose at the same place and at the same time as the other crimes with which he was charged, his witnesses to show alibi for the rape would not be different. Also, since the defendant was in default from November 15, 1983, to October 22, 1985 (and also from March 3, 1986, to June 18, 1986), his own absences may be viewed as the primary cause of any difficulty in preparing a defense.

3. *Insufficient evidence*. The defendant's motion for a required finding of not guilty was correctly denied. The evidence before the grand jury was substantiated at trial. The jury were warranted in inferring from the victim's testimony that the defendant became violent after she refused to accede to his desire to sleep with her. She woke up without her pants and her blouse and bra were torn. Semen, a piece of twig, and dirt were found in her vagina. This was sufficient circumstantial evidence for the jury to find penetration beyond a reasonable doubt. There was also strong evidence of consciousness of guilt on the part of the defendant. He twice defaulted and, in addition, when the police executed an arrest warrant, he was found hiding in an attic with a blanket of fiberglass insulation covering his entire body.

4. *Prosecutorial misconduct in closing argument*. Although defense counsel in his opening stated that he would produce witnesses who were with the defendant at 11:00 P.M. on the

---

[1] In *United States* v. *Goodwin*, 457 U.S. at 380 n.11, the Supreme Court went as far as to say: "A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right." Obviously, a defendant has no right to default.

night of the incident, none was produced. After the prosecutor, in closing, referred to the defendant's stated intention in opening argument to produce witnesses,[2] the defendant moved for a mistrial. The motion was denied, but the judge, in the language set forth in the margin,[3] instructed the jury in his charge not to consider witnesses who did not appear.

In view of the defendant's opening argument and his claims of alibi, the prosecutor's remarks were not improper. Cf. *Commonwealth* v. *Bryer*, 398 Mass. 9, 11-13 (1986). Moreover, even if there was error, it was corrected by the judge's curative instructions, see *Commonwealth* v. *Benjamin*, 399 Mass. 220, 223-224 (1987), particularly as reinforced by other instructions which carefully set forth the Commonwealth's burden of production and proof and informed the jury of the limited role of counsels' argument. We think it clear beyond a reasonable doubt that the jury could not have been misled as to the Commonwealth's burden of proof.

The other objections to the prosecutor's argument were raised for the first time on appeal and hence are considered on the "substantial risk of a miscarriage of justice" standard. The

---

[2] "Ask yourself this. Consider this: Mr. George told you in his opening that he was going to produce witnesses to tell you where the defendant was when this incident happened.

"There was only one witness who testified as to where the defendant was when this happened, and that was [the victim]. Nobody else. That's all smoke. Phantoms. The only witness who testified as to where Tavares was when this incident happened was [the victim].

"I suggest to you her testimony was credible; that he presented no evidence, no person that he could find after four years to tell you where he was if he wasn't with her; and there is a very good reason why he presented no evidence, nobody from Smuggler's Den, nobody from Whitman Street, his old lady, nobody, because there is nobody. It's all smoke."

[3] "There was a reference made by one of the attorneys in closing argument about witnesses that did not appear. You don't concern yourself with witnesses that don't appear. You don't decide this case on what you think they might have told you. You don't consider that at all. You consider what happened in the courtroom over this past week by the several people that came in and held their hand up and said, I swear to tell the truth. That's who you're going to get the evidence that you're going to decide this case from, along with the exhibits. So, we'll forget who didn't come in and consider those that did."

defendant's counsel in closing argument claimed that the prosecution did not "follow up" the defendant's claims. In response, and quite properly, the prosecutor corrected what he considered an erroneous impression created by defense counsel. The prosecutor pointed out what the police had done and commented that the defendant had produced nothing "to check out." See *Commonwealth* v. *Owens*, 402 Mass. 639, 642 n.3, 644 (1988). "The prosecutor's reply fell within the scope of permissible rebuttal." *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 681 (1985).

The defendant's additional contention that the prosecutor's references to the severity of the victim's injuries were inflammatory and designed to elicit sympathy from the jury is also without merit. The injuries were relevant to the charges and, indeed, the prosecutor told the jury not to decide the case on the basis of sympathy. There was no error, let alone a substantial risk of a miscarriage of justice.

*Judgments affirmed.*