COMMONWEALTH vs. CHARLES TAYLOR.

Nos. 89-P-492 & 90-P-1122.

Middlesex. March 20, 1992. - May 22, 1992.

Present: ARMSTRONG, PORADA, & LAURENCE, JJ.

*Homicide. Evidence*, Previous testimony of unavailable witness, Conscious-
ness of guilt. *Witness*, Unavailability. *Constitutional Law*, Confronta-
tion of witnesses. *Self-Defense. Practice, Criminal*, Request by jury, In-
terrogation of jurors, Grand jury proceedings. *Jury and Jurors.*

At a criminal trial, the judge did not err in admitting in evidence the prior
    testimony of a Commonwealth witness given at a probable cause hear-
    ing [574-576], or in allowing a transcript of her testimony to be read to
    the jury rather than introduced as an exhibit [576].
At a murder trial, the judge properly exercised his discretion in informing
    the jury that a certain prospective witness for the Commonwealth had
    died in circumstances unrelated to the case. [577]
At a murder trial, the judge did not err in admitting evidence of threats
    made by the defendant to two of the Commonwealth's witnesses, for
    the purpose of showing consciousness of guilt. [577]
The evidence at a murder trial did not warrant instructions to the jury on
    the issues of self-defense and manslaughter. [577-579]
The judge at a murder trial acted within his discretion in denying the
    jury's request for a transcript of certain prior recorded testimony of an
    unavailable witness that had been read aloud to them during the trial.
    [579]
On appeal from his murder conviction, a defendant made no showing that
    the judge abused his discretion in refusing to allow a postverdict inquiry
    of the jurors to determine whether extraneous material was introduced
    into the jury room during the jury's deliberations. [579-580]
Where evidence before a grand jury overwhelmingly supported an indict-
    ment of the defendant for murder, no substantial risk of a miscarriage
    of justice was created by the prosecutor's failure to inform the grand
    jury of a prior inconsistent statement by one of the witnesses. [580-581]

INDICTMENT found and returned in the Superior Court De-
partment on July 3, 1986.

The case was tried before *Paul A. Chernoff*, J., and a mo-
tion for a new trial was heard by him.

*Anthony M. Fredella* for the defendant.

*Howard A. Wise,* Assistant District Attorney, for the Commonwealth.

PORADA, J. From his conviction of murder in the second degree (G. L. c. 265, § 1) and the denial of his motion for a new trial, the defendant appeals. He claims that the trial judge erred (1) in admitting in evidence the prior testimony of a Commonwealth witness given at a probable cause hearing in which the defendant's right of cross-examination was limited and in allowing a transcript of that testimony to be read to the jury, rather than introduced as an exhibit; (2) in informing the jury during their empanelment that this witness had died in an unrelated automobile accident; (3) in admitting in evidence threats made by the defendant to two of the Commonwealth witnesses; (4) in failing to charge the jury on self-defense and manslaughter; (5) in refusing to allow the jury's request for a transcript; and (6) in refusing to allow a postverdict inquiry of a juror to determine if extraneous material was introduced in the jury room during the jury's deliberations. The defendant also claims that the grand jury proceedings were impaired by the withholding of known, relevant exculpatory evidence. We affirm the conviction and denial of the motion for a new trial.

The Commonwealth presented to the jury the probable cause testimony of Donna Pierni, who had died before the trial began. She had testified as follows. On the evening that the victim (Robert Zinnani, Jr.) was killed, she accompanied him to 14 Sergeant Street in Somerville to talk to the defendant. Before going there, the victim had made several stops to sell cocaine or to collect money owed him. Upon their arrival, the victim entered the building alone after telling her to remain in the car. He then returned to the car and said they would have to wait. While they sat in the car, a woman identified as Marion Scolles came out of the building on several occasions to talk to the victim. After each of these conversations, Scolles would return to the house. Finally on about her fourth trip to the car, she told them that the defendant had said that they could enter the house. All three

entered the basement of the building and found the defend-
ant with two men in the back room. This room had only one
entrance. The defendant asked the two men to leave, and
they complied. He then gave Pierni and Scolles some cocaine
and told the two women to leave, because he had some busi-
ness to discuss with the victim. The women left the room but
remained in the basement. Shortly thereafter, Pierni heard a
"loud pop" which came from this back room. The defendant
then came out of the room. When Pierni asked for the vic-
tim, the defendant said he had gone out the window. Since
the victim had Pierni's car keys, she went outside to look for
him. When she couldn't find him, she returned to the base-
ment and saw the defendant with her car keys. She then in-
sisted that the victim must still be in the side room. The de-
fendant told her that she "wouldn't like what [she would]
see." When Pierni entered the room, she saw the victim sit-
ting on the couch, with his hands on his lap, and blood com-
ing down his face and on the wall behind his head. She also
saw a shotgun on a workbench three to four feet away from
the victim. The defendant told Pierni that she would "have to
keep [her] mouth shut, that [she] knew too much" and that
she "had to help or [she would] lay next to Bobby [the vic-
tim]." Being frightened, Pierni helped the defendant and
Scolles clean up the back room, wrap the victim's body in a
blanket, and put it in the trunk of her car. While cleaning
the back room, she saw the defendant wipe the shotgun with
a paper towel and place it in a bag. In response to her in-
quiry about what happened in that room, the defendant had
told her that the victim "said that he was going to kill
Marion and [the defendant]. And that's why Bobby's gone."
Accompanied by Scolles, she transported the body to an ad-
dress in Billerica which the defendant gave them. The ad-
dress was the home of Patricia Tassi.

Patricia Tassi testified that Pierni and Scolles arrived at
her house in the early morning hours of April 25, 1986. They
gave her a shotgun in a bag which she hid under the couch.
The defendant arrived sometime later. He told Tassi that "he
had just killed somebody and there was a body in the trunk."

He told her that he wanted to put the body in her back yard. Tassi objected because she lived there with her three children. The defendant said he had no other place to put it. The defendant, Pierni, and Scolles then proceeded to dispose of the body in the swamp behind Tassi's house as Tassi watched from inside the house. After disposing of the body, the defendant told Tassi to clean the gun. He then asked Tassi where he could hide the gun. Tassi told him that she knew of a place in Tewksbury where he could dispose of the gun. The two of them drove there, and Tassi hid the gun. The defendant told Tassi that if she testified he would hurt her. A couple of days later, Tassi went to the Billerica police and told them what had occurred at her house on the morning of April 25 and where both the body and the gun were located.

The police uncovered the body and found the gun. There were no fingerprints on the gun. An autopsy revealed that the victim had died from a shotgun blast to the head and that the gun was held less than one foot from the head of the victim.

The defendant testified that he was present when the victim arrived with Scolles and Pierni. Shortly thereafter two men whom he did not know appeared and asked for the victim. The two men asked the victim to locate a third person, and the victim said that he would try. The two men then left and the victim asked Pierni and Scolles to leave. Soon thereafter, the two men reappeared and asked if the victim had located the person requested but the victim replied that he had tried without success. The men left. The victim then became agitated and broke a freebase pipe by slamming it against the floor. Appearing very upset, the victim pulled a revolver from the back of his shirt. The defendant tried to calm him down and found an excuse to leave the room. Before leaving, the victim told him to tell Pierni that he left by the window. When the defendant was outside the building, he heard a loud noise. Upon returning to the cellar, he found the victim sitting on the couch, with a lit cigarette in his mouth, blood coming from his mouth, a revolver between the cushions next to him, and a shotgun on the floor. After

observing this scene, he told Pierni that he had no idea what had happened but that if they were not careful they were liable to be lying beside the victim. He then left. After receiving a phone call at about 3:00 A.M., he went to Patricia Tassi's house in Billerica. There he agreed to help dispose of the body. After doing so, Tassi asked the defendant to clean the shotgun which she produced from beneath a couch cushion. He refused but told her how to clean it. He then agreed to accompany her to Tewksbury to dispose of the gun.

1. *Prior reported testimony.* In the Somerville District Court, the defendant was charged with murder of the victim. Donna Pierni testified under oath at his probable cause hearing. She was subject to extensive cross-examination, not only by the defendant's counsel but also by defense counsel for Marion Scolles, who was charged with being an accessory after the fact. Donna Pierni died in an unrelated automobile accident after the probable cause hearing. Prior to trial, cross-motions were filed by the parties for the use and exclusion of Pierni's probable cause testimony. After a hearing, the judge permitted the Commonwealth to use Pierni's testimony at trial and to allow one assistant district attorney to read the questions and another to read the answers of both the direct and cross-examination.

The defendant asserts that the judge erred in allowing the testimony. He claims that it lacked the indicia of reliability because his right of cross-examination had been improperly limited in the probable cause hearing. One of the prerequisites for the admission of prior reported testimony is proof that it bears sufficient " 'indicia of reliability' to furnish the jury with an adequate basis to evaluate the truth of the former statements." *Commonwealth* v. *Ortiz*, 393 Mass. 523, 531 (1984). *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 429 (1988). In order to establish reliability, "[t]he prior testimony of the currently unavailable witness must have been given 'in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the

testimony is . . . offered.' " *Commonwealth* v. *Ortiz*, 393 Mass. at 532, quoting from *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980). At a probable cause hearing, a defendant's opportunity and motive to cross-examine a witness are similar to those he has at trial, and these factors give that prior testimony sufficient reliability. *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968). *Commonwealth* v. *Ortiz*, 393 Mass. at 535. A defendant at a probable cause hearing must, however, have the opportunity to cross-examine adverse witnesses to the extent available at trial. *Myers* v. *Commonwealth*, 363 Mass. 843, 855-856 (1973).

In this case, the defendant argues that on three occasions he was denied that right. We find that only one has merit.[1] On that occasion, the judge sustained the Commonwealth's objection to defense counsel's question to Pierni regarding whether she had consumed any alcohol or drugs at the victim's aunt's house. In doing so the judge said, "We're getting pretty far afield, we're outside the scope of the original examination." While the judge was clearly wrong in sustaining the objection on that basis, see *Beal* v. *Nichols*, 2 Gray 262, 264 (1854); *Nuger* v. *Robinson*, *post* 959 (1992), the defendant conducted an extensive cross-examination of the witness and elicited this information from the witness through other questions to her. Moreover, it appears from the record that in spite of the judge's ruling on this one occasion he did not otherwise limit the defendant's examination of the witness to matters covered on direct examination. Under the confrontation clause of the Sixth Amendment to the United States Constitution, a defendant is not entitled to a cross-examination that is "effective in whatever way, and to whatever ex-

[1] The other two challenges relate to the judge's refusal to allow the witness to respond to a question as to whether the victim used drugs during the day and whether there were any places in the basement where people could hide. Both objections were properly sustained on evidentiary grounds. In the first instance, defense counsel had failed to lay a proper foundation for the witness's basis of knowledge or expertise and was able through other questions to elicit this information from the witness. In the second instance, the question called for an opinion from the witness when she had just testified that she did not recall what was in the basement.

tent, the defense might wish." *Commonwealth* v. *Siegfriedt*, 402 Mass. at 429, quoting from *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985). Rather, it is sufficient for purposes of determining the reliability of the prior reported testimony that the previous cross-examination of a witness "provided the jury with a constitutionally adequate basis for evaluating the witness's credibility." *Commonwealth* v. *Siegfriedt*, 402 Mass. at 429, citing *California* v. *Green*, 399 U.S. 149, 161 (1970). We conclude in this case that Pierni's prior reported testimony bore sufficient indicia of reliability to warrant its admission in this case.

The defendant also asserts that the judge erred in allowing the prior reported testimony to be read to the jury by two assistant district attorneys. He argues that the same person should not have portrayed the witness on both direct and cross-examination and argues, in the alternative, that the transcript should not have been read but simply presented as an exhibit.

Prior reported testimony may be proved by means other than an official transcript of the earlier proceedings. *Commonwealth* v. *DiPietro,* 373 Mass. 369, 392-393 (1977). The testimony may be presented by a witness who was present at the former proceeding and who is able substantially to reproduce the material testimony. We see little to distinguish this manner of presentation from the mode of presentation used in the present case where one assistant district attorney portrayed the witness on both direct and cross-examination. Bearing in mind that, in the conduct of a trial, the judge has a wide inherent power to do justice and to adapt procedure to that end, see *McLaughlin* v. *Municipal Ct. of the Roxbury Dist.*, 308 Mass. 397, 405 (1941); *Quincy Trust Co.* v. *Taylor*, 317 Mass. 195, 198-199 (1944), the judge committed no error in allowing the prior reported testimony to be presented to the jury in this manner.[2]

---

[2]The defendant also alleges that the judge erred in failing to give the defendant an opportunity at an on-the-record hearing to object line by line to the transcript and to have the transcript redacted to meet his objections in that manner. The defendant cites no legal precedent to support his

2. *Jury empanelment.* The defendant asserts that the judge erred in telling the jury, during their empanelment, that Donna Pierni had died in an unrelated automobile accident. The defendant claims that he was prejudiced by this statement, because evidence was introduced during the trial that the defendant had threatened the deceased witness, and the jury might have concluded that the defendant in some way was responsible for her death. There was no error. The judge is required to determine whether the jurors know or are related to any of the witnesses. G. L. c. 234, § 28. Mass.R.Crim.P. 20, 378 Mass. 889-890 (1979). A judge has wide discretion to refine or improve on the subjects of c. 234, § 28, by going into more detail. *Commonwealth* v. *Harrison*, 368 Mass. 366, 371 (1975). *Commonwealth* v. *Lacy*, 371 Mass. 363, 373 (1976). In this case, Donna Pierni was in essence a witness for the Commonwealth. We do not consider that the judge abused his discretion in explaining her absence. Moreover, without this statement, the jury would have been more likely to speculate as to the cause of her death.

3. *Threats to Commonwealth witnesses.* The defendant alleges that the judge should have excluded evidence of threats, recited above, made by the defendant to Pierni and Tassi. This evidence was admissible, however, to show consciousness of guilt. *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975), and cases cited. *Commonwealth* v. *Leo*, 379 Mass. 34, 41 (1979). The judge properly could conclude that the probative value of this evidence outweighed any prejudice to the defendant. *Commonwealth* v. *Leo, supra.*

4. *Instructions on self-defense and manslaughter.* "A criminal defendant is entitled to an instruction on the law relating to self-defense . . . if the evidence, viewed in the light most favorable to the defendant, sufficiently raises the issue." *Commonwealth* v. *Paton*, 31 Mass. App. Ct. 460, 463

---

claim. Instead, he argues that the failure to follow this procedure resulted in the presentation of inadmissible evidence. We note that the judge did give the defendant an opportunity to object to any portion of the transcript which he deemed inadmissible, to record those objections on the record, and to have the transcript redacted to meet any justifiable objections. Consequently, we fail to see how the defendant was prejudiced.

(1991), citing *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). *Commonwealth* v. *Glass*, 401 Mass. 799, 808 (1988). "There must be evidence warranting at least a reasonable doubt that the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case. *Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978), and cases cited. Absent the latter two elements, an instruction on manslaughter because of reasonable provocation or because of the use of excessive force in self-defense may be warranted." *Commonwealth* v. *Harrington*, 379 Mass. at 450. Although the defendant testified that he did not shoot the victim, if there was any evidence supporting his claim that he acted in self-defense or was guilty of the lesser offense, manslaughter, he would be entitled to these instructions. See *Commonwealth* v. *Walden*, 380 Mass. 724, 726, 727 (1980).

Here, there was evidence that the victim had a revolver in his possession. The defendant also had told Donna Pierni that the reason the victim was dead was because he was going to kill Marion Scolles and himself. There was, however, no evidence to show when the victim had made these alleged threats to the defendant. See *Commonwealth* v. *Amaral*, 389 Mass. 184, 189 (1983)(threat must be of an "immediate and intense offense"). There was also no evidence that the victim had threatened the defendant with a revolver or committed any overt act against Marion Scolles or the defendant constituting an assault or threat sufficient to place the defendant or Scolles in actual and reasonable apprehension of grievous bodily harm or death. See *Commonwealth* v. *Glass*, 401 Mass. at 808. In fact, the evidence presented disclosed that the victim was found sitting on the couch with his hands in his lap and a lit cigarette in his mouth. Further, there was no evidence that the defendant took all proper means to avoid

physical combat before using deadly force. *Commonwealth* v. *Epsom*, 399 Mass. 254, 258 (1987). Consequently, we conclude that the evidence presented to the jury did not warrant an instruction on either self-defense or manslaughter.

5. *Denial of transcript.* The defendant asserts that the judge improperly refused to allow the jury to have a transcript of Donna Pierni's testimony from the probable cause hearing, which had been read to the jury. The record does not indicate that the edited transcript was introduced as an exhibit during the trial. In any case, "[t]he furnishing of a transcript to a deliberating jury is discretionary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 370 (1983). In the absence of an agreement by the parties, the refusal to furnish the transcript was not an abuse of discretion.

6. *Postverdict inquiry of a juror.* The defendant argues that the judge erred in not permitting a postverdict inquiry of a juror as to whether she received a communication from her husband during jury deliberations[3] which might have affected her vote. The record discloses that the defendant filed a motion for such an inquiry, without an accompanying affidavit, and that the judge took no action on it. The defendant then filed a motion for a new trial. At the hearing on the motion for a new trial, the defendant argued that extraneous material may have reached one of the jurors as set forth in his motion for an inquiry of a juror. The motion for the new trial was denied. We conclude that implicit in that denial was the denial of the motion for a postverdict inquiry of this juror. There was no error, for the party requesting an investigation must make a colorable showing that an extrinsic influence may have had an impact upon the jury's impartiality. *Commonwealth* v. *Dixon*, 395 Mass. 149, 151-152 (1985). Whether such a showing has been made is properly addressed to the discretion of the trial judge. *Id.* at 152. Here, the defendant did not demonstrate by affidavit or otherwise that any message was delivered to the juror or that it in-

---

[3]The message allegedly related to cancellation of vacation plans if deliberations continued.

volved any matter pending before the jury which would have had an impact on their deliberations. *Ibid.*

In addition, we note that defense counsel has failed to furnish any legal precedent to support his conclusory arguments on this issue in his brief. As a consequence, we deem his failure adequately to address this issue as a waiver. Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Commonwealth* v. *Elder*, 389 Mass. 743, 747 n.9 (1983).

7. *Grand jury proceedings.* The defendant claims that the grand jury proceedings were impaired by the withholding of known, relevant exculpatory evidence. He correctly alleges that the jury was not informed of a prior inconsistent statement made by Patricia Tassi at the probable cause hearing. Tassi had stated that the defendant told her that he killed the victim because the victim had tried to kill him.[4] During the grand jury proceedings Tassi testified that the defendant did not tell her why the victim was dead or where they got the body.

The defendant first presented this argument to the trial judge in his motion for a new trial, which was denied. It is inherent in Mass.R.Crim.P.13(a)(2), 378 Mass. 871 (1979), that each ground for a motion to dismiss must be presented to the trial judge prior to trial, and any ground then known to the defendant must be deemed waived unless the trial judge for cause grants relief from such waiver. *Commonwealth* v. *Mayfield*, 398 Mass. 615, 622-623 n.4 (1986). *Commonwealth* v. *Tavares*, 27 Mass. App. Ct. 637, 638 (1989). No relief from waiver was granted in this case. As a result, our review is limited to the standard of a substantial risk of a miscarriage of justice. *Commonwealth* v. *Tavares*, *supra* at 639.

---

[4]The defendant also asserts that the grand jury should have been informed that the victim was under the influence of drugs and alcohol and that he was in an agitated state on the evening of his murder. We do not address this contention because, contrary to the defendant's claim, the grand jury were made aware that the victim had ingested cocaine, had been drinking, and was in an agitated state before he encountered the defendant on the evening of his death.

In considering a claim that deceptive evidence was presented to the grand jury the defendant must show that (1) the evidence was given to the grand jury knowingly or with reckless disregard for the truth and for the purpose of obtaining an indictment; and (2) that the evidence probably influenced the grand jury's determination to indict the defendant. *Commonwealth* v. *Mayfield*, 398 Mass. at 621. *Commonwealth* v. *Kelcourse*, 404 Mass. 466, 468 (1989). Here, any chance was minimal that the grand jury would have decided differently had they been advised of the prior inconsistent statement known to the prosecutor. Through Donna Pierni's probable cause testimony, the grand jury were advised that the defendant had said that the victim was going to kill him and another person. The evidence overwhelmingly supported an indictment for murder. There was no substantial risk of a miscarriage of justice.

8. *Motion for a new trial.* The defendant has failed adequately to present on appeal his claim that the judge erred in denying his motion for a new trial. He has failed to include in the record his motion or any argument which comports with Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). He has, however, presented us with the record of the hearing held on this motion and the judge's ruling in denying the motion. Since it is apparent that his motion raised the very same issues argued in his appeal from the judgment, we affirm its denial for the reasons stated herein.

*Judgment affirmed.*
*Order denying motion for new trial affirmed.*