Samson OMOSEFUNMI, Petitioner,

v.

The **ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSA-CHUSETTS, Respondent.**

No. CIV.A. 99–CV–12495–RGS.

United States District Court,
D. Massachusetts.

May 31, 2001.

Samson Omosefunmi, Batavia, NY, petitioner pro se.

Elizabeth K. Frumkin, Assistant Attorney General, Criminal Bureau, Boston, MA, for Commonwealth of Mass, respondent.

### ORDER

STEARNS, District Judge.

On April 30, 2001, Magistrate Judge Bowler submitted a Report recommending that Samson Omosefunmi's petition for writ of habeas corpus be dismissed. On May 14, 2001, the Massachusetts Attorney General filed a limited objection to the Report. After review of the Report and the objection, I will *ADOPT* the Magistrate Judge's Recommendation. The petition is hereby *DISMISSED*.

SO ORDERED.

## REPORT AND RECOMMENDATION RE: MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS (DOCKET ENTRY # 16)

BOWLER, United States Magistrate Judge.

Pending before this court is a motion to dismiss (Docket Entry # 16) filed by respondent the Attorney General for the Commonwealth of Massachusetts ("respondent"). Respondent moves to dismiss the above styled petition for writ of habeas corpus filed pro se by petitioner Samson Omosefunmi ("petitioner") because: (1) petitioner is not "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) and section 2254; (2) petitioner fails to exhaust state court remedies and, in particular, fails to present federal constitutional claims to the Massachusetts Supreme Judicial Court ("SJC"); and (3) certain claims in the petition do not raise a federal or constitutional issue.[1]

Even if an evidentiary hearing is not barred under 28 U.S.C. § 2254(e)(2) ("section 2254(e)(2)") of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"),[2] at the present time petitioner has no right to an evidentiary hearing on the issues raised by respondent under the pre-AEDPA standard, assuming, arguendo, its applicability after the AEDPA's enactment. See Edwards v. Murphy, 96 F.Supp.2d 31, 49–50 (D.Mass. 2000) (setting forth relevant standards and recognizing dispute as to whether standard for conducting evidentiary hearing set forth in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as modified by Keeney v. Tamayo–Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), remains applicable after AEDPA's enactment); see also Fryar v. Bissonnette, 113 F.Supp.2d 175, 179–180 (D.Mass.2000) (the petitioner did not negligently fail to develop record under section 2254(e)(2) and could, therefore, only obtain hearing if he satisfied Townsend standard); Marshall v. Hendricks, 103 F.Supp.2d 749, 770 (D.N.J.2000) (same).

The facts regarding exhaustion and the character of the arguments presented to the state courts are contained in the state court records. The only dispute, which would not change the result of the exhaustion analysis, involves whether petitioner filed a notice of appeal on October 23, 1992. Petitioner submits that he filed such an appeal. He also contends that, after the appellate court dismissed the appeal for want of prosecution, he filed a motion for reconsideration of the dismissal which, after requiring additional filings, the appellate court allowed on January 6, 1997.[3]

Respondent submits that petitioner only filed an appeal of the trial court's denial of the motion to withdraw the guilty plea. Respondent notes that the appellate court permitted petitioner to reinstate this appeal on February 20, 1998.

1. A motion to dismiss is an "appropriate vehicle for challenging" a petitioner's claims in a proceeding under 28 U.S.C. § 2254. *Killela v. Hall*, 84 F.Supp.2d 204, 208 (D.Mass.2000).

2. Section 2254(e)(2) creates a bar to conducting an evidentiary hearing in federal court. If the petitioner fails to develop the facts within the meaning of the first clause of section 2254(e)(2), this court cannot hold an evidentiary hearing unless the petitioner "meets the other conditions of § 2254(e)(2)."

*Williams v. Taylor*, 529 U.S. 420, 430, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Under the first clause of section 2254(e)(2), "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. at 430, 120 S.Ct. 1479.

3. Petitioner did not submit a brief to the appellate court until November 1998.

A close examination of the state court records in the file demonstrates that petitioner filed a notice of appeal dated October 23, 1992, but not with respect to indictment 30070. Rather, petitioner filed an appeal of indictments 30069 and 30287 to 30290. The incomplete copy of the appellate court docket sheet for the appeal (No. 94–P–001714) reflects the filing of the appeal, the February 1995 dismissal of the appeal, petitioner's November 1995 motion for reconsideration of the dismissal and the appellate court's December 1, 1995 direction to file additional papers detailing why the brief was not timely filed. In addition to petitioner's motion for reconsideration, the record contains: (1) petitioner's motion to reinstate the appeal dated December 6, 1996, in compliance with the appellate court's instructions; and (2) a file stamped copy of petitioner's motion to amend the appeal to include indictment 30070 filed in the trial court in February 1997 and allowed on March 21, 1997.

Consequently, petitioner's factual scenario appears more accurate than respondent's. In any event, the record contains only one appellate brief filed in No. 94–P–001714 with the date stamp November 18, 1998, and one application for further appellate review filed in No. 94–P–001714 with a

date of August 15, 1999. As discussed *infra*, these are the critical papers for purposes of analyzing respondent's failure to exhaust state court remedies argument. Hence, an evidentiary hearing is not necessary to resolve the immaterial factual discrepancy with respect to exhaustion.

The facts with respect to petitioner's "in custody" status, including respondent's April 27, 2001 submission, are also contained in the record. The motion to dismiss (Docket Entry # 16) is therefore ripe for review.

## BACKGROUND

As presented in the petition,[4] petitioner challenges his October 1992 conviction, after a plea of guilty, of four counts of larceny in violation of section 30 of Massachusetts General Laws chapter 266 (Indictment 30070).[5] He seeks habeas relief on the basis that: (1) he made an involuntary guilty plea without knowledge of the nature of the charges because he was not informed of the facts and circumstances surrounding his arrest, indictment and crimes, particularly the failure of the grand jury minutes to name or charge him with a crime;[6] (2) trial counsel rendered

---

**4.** On April 24, 2000, this court issued a Procedural Order stating that it would consider both the initial petition, filed on December 8, 1999, and the subsequently filed petition submitted on the proper form as the governing petition. (Docket Entry # 8).

**5.** The petition also cites to the grand jury's indictment of petitioner on four counts of false representation to the Massachusetts Department of Welfare ("the welfare department") in violation of section 5B of Massachusetts General Laws chapter 18 (Indictment 30069). Petitioner pled guilty to this indictment at the October 8, 1992 hearing. The trial judge then placed the indictment on file with petitioner's consent.

The petition additionally cites to indictment 30287 for false representation, indictment

30288 for conspiracy to make false representations, indictment 30289 for larceny and 30290 for conspiracy to commit larceny. On October 8, 1992, the trial judge conducted the requisite colloquy regarding the guilty pleas to indictments 30069 and 30070. After accepting petitioner's guilty pleas to these charges, he ordered indictment 30290 placed on file with petitioner's consent and stated that the remaining charges in indictments 30287, 30288 and 30289 would be nolle prossed.

**6.** The appellate brief filed in support of the direct appeal raises a similar ground but challenges the guilty plea on the basis that petitioner was under the influence of drugs. The application for further appellate review ("AL-

ineffective assistance of counsel[7] because he failed to alert petitioner that the grand jury minutes did not name or charge him

OFAR") filed with the SJC, however, completely omits any reference to this claim.

7. Mindful of petitioner's pro se status, this ground of relief is presented in the supporting facts section of ground one and the heading and supporting facts sections of ground two. It also appears in paragraph 12 of the initial petition. The supporting facts section of ground one contains the statement that petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments because he was never informed that the grand jury minutes did not name or charge him with a crime. Ground two elaborates and repeats this claim. Respondent's argument that petitioner does not present this claim as a violation federal constitutional law is therefore an overly narrow view of the petition which focuses solely on paragraph 12(B) of the petition.

8. The appellate brief also alleges that petitioner was deprived of effective assistance of counsel in violation of the Sixth and Fourteenth Amendments. The brief cites the primary Supreme Court case in this area, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and asserts that counsel was ineffective because he allowed petitioner to pled guilty while under the influence of drugs and failed to properly investigate the case by determining that the grand jury minutes never named petitioner or charged him with violating any crimes.

The ALOFAR likewise raises an ineffective assistance of counsel claim in violation of the Sixth and Fourteenth Amendments. The basis for trial counsel's deficient performance, as presented to the SJC, is that trial counsel failed to alert petitioner that the grand jury minutes did not name or charge him with a crime. Although petitioner also raised an ineffective assistance of counsel claim based on state law, the standard is essentially the same. See *Scarpa v. DuBois*, 38 F.3d 1, 7 & n. 4 (1st Cir.1994) (finding ineffective assistance of counsel claim under Massachusetts law functionally equivalent to claim under federal law as set forth in three Massachusetts cases). Indeed, while addressing the argument, the ALOFAR cites to one of the Massachusetts cases, *Commonwealth v. Satterfield*, 373 Mass.

with a crime;[8] (3) the grand jury minutes were defective because they failed to name or charge petitioner with a crime as to warrant indictment and conviction;[9] and

109, 364 N.E.2d 1260 (1977), which the First Circuit in *Scarpa* characterizes as "reminiscent of the federal constitutional standard." *Scarpa v. DuBois*, 38 F.3d at 6–7.

The heading of ground two, however, also refers to the conviction being "obtained by use of coerced confession." To the extent petitioner is attempting to assert that he was coerced into pleading guilty and confessing to the facts represented by the Commonwealth at the October 8, 1992 guilty plea proceeding, such a claim is not exhausted.

9. Respondent's interpretation of this ground of relief focuses exclusively on the heading in ground three which reads that petitioner's "conviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest." As stated in the April 24, 2000 Order, however, the petition includes both the initial petition and the subsequently filed petition on the proper form. Paragraph 13 of the initial petition as well as the supporting facts to ground three in the subsequently filed petition uniformly challenge the deficiencies of the grand jury minutes. The heading in 12(C) is essentially petitioner's way of arguing that he was arrested and convicted on the basis of grand jury minutes which did not name or charge him with a crime.

The ALOFAR alerts the SJC to the nature of a similar claim on pages seven through eight. Therein, petitioner argues that the grand jury minutes did not name or charge him with a crime as to warrant an indictment. Petitioner complains that all that can be gleaned from the grand jury minutes is that a number of individuals using names other than Samson Omosefunmi engaged in insurance fraud. He claims that the indictment must be dismissed as in violation of the Fourth and Fifth Amendments. Petitioner therefore fairly presented the claim in ground three based on federal constitutional law to the SJC in the ALOFAR. Citing a federal case, petitioner also notes that the grand jury minutes did not sufficiently inform him of the nature of the charges against him. It is worth noting, however, that before pleading guilty in October 1992, petitioner received a copy of the grand jury minutes dated February 25, 1992, copies of

(4) the conviction was obtained in violation of the privilege against self-incrimination because petitioner questioned the relevance of introducing certain items of evidence and the Commonwealth based its evidence "on information from liars and crooks." [10]

all the indictments, a copy of a report of a "Special Federal Agent" with an accompanying affidavit and a report by a special investigator.

The petition, however, fails to cite to the Constitution, to any constitutional right or to any federal cases relying on federal constitutional law in support of ground three. It is therefore unclear whether petitioner is claiming a violation of state law, as argued by respondent, or a violation of federal constitutional law. Given petitioner's pro se status and the fact that he uses the same language in the ALOFAR to describe the claim as he uses in the supporting facts of ground three, this court will construe the petition as alleging a Fourth and Fifth Amendment violation notwithstanding respondent's argument to the contrary.

With respect to ground three, the appellate court affirmed the judgment for the reasons stated in the Commonwealth's brief. The Commonwealth made two arguments, both grounded in state law. First, citing *Commonwealth v. Taylor*, 32 Mass.App.Ct. 570, 591 N.E.2d 1108, 1115 (1992), as well as the waiver rule in Mass.R.Crim.P. 30, the Commonwealth asserted that petitioner did not raise the issue in a timely and proper manner. As discussed in *Taylor*, in order to seek dismissal of an indictment, the defendant must present the argument first to the trial judge "and any ground then known to the defendant must be deemed waived unless the trial judge for cause grants relief." *Commonwealth v. Taylor*, 591 N.E.2d at 1115. Massachusetts courts consistently enforce this rule which is embodied in Mass.R.Crim.P. 13(a)(2). *See, e.g., Commonwealth v. Mayfield*, 398 Mass. 615, 500 N.E.2d 774, 779 n. 4 (1986).

Second, the Commonwealth argued that the "John Doe" investigation was proper under Massachusetts General Laws chapter 277, section 19. This statute provides, in pertinent part, that, "If the name of an accused person is unknown to the grand jury, he may be described by a fictitious name or by any other practicable description with an allegation that his real name is unknown." Mass.Gen.L. ch. 277, § 19.

Because the appellate court affirmed the judgment based on the Commonwealth's brief, it did not reach the Fourth and Fifth Amendment arguments. In other words, there is no indication that the appellate court "researched, examined in depth, or intended to rely upon, federal law." *Puleio v. Vose*, 830 F.2d 1197, 1202 (1st Cir.1987); *accord Tart v. Commonwealth of Massachusetts*, 949 F.2d 490, 496 (1st Cir.1991). Thus, the appellate court did not waive the independent and adequate state law ground for affirming the judgment. Accordingly, absent cause and prejudice or additional circumstances which, as discussed *infra*, petitioner fails to establish, federal habeas relief is barred because the appellate court "reached its decision on the basis of an adequate and independent state-law ground." *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir.1995).

The SJC summarily denied the ALOFAR. It is therefore unclear whether the SJC reached the federal constitutional argument. The ALOFAR made no argument based on state law. Rather, petitioner alleged that the failure of the grand jury minutes to name or charge him with a crime as to warrant indictment violated the Fourth and Fifth Amendments. The Commonwealth's brief in opposition to the ALOFAR is not contained in the record. To the extent the SJC's decision, in light of the argument made in the ALOFAR, fairly appears to rest on federal law, *see Brewer v. Marshall*, 119 F.3d 993, 999–1000 (1st Cir. 1997), the decision denying relief was not "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court. To the extent it is not reasonably clear that the SJC's reasons for denying the ALOFAR rest upon its view of federal law, *see Tart v. Commonwealth of Massachusetts*, 949 F.2d at 496, ground three is barred from federal habeas review because of the independent and adequate state law ground that petitioner waived the argument by not raising it before the trial judge.

10. The supporting facts set forth in part 12(D) of ground four contain the same sentence as paragraph 14 of the initial petition. Thus, this court reads paragraph 14 together with ground four.

On February 25, 1992, the grand jury heard testimony from a present or former conciliator of the Massachusetts Department of Industrial Accidents. A conciliator meets with employees who file workmen's compensation claims, their attorneys and representatives of the insurance carrier to resolve claims before referring them to a state court judge. The conciliator testified about two individuals, Festus Omosefumni,[11] a male, and Olutoyin Friday, a female. Under various names, these individuals met with the conciliator at different times posing as injured employees of various businesses. The conciliator testified about the amount of workmen's compensation payments these individuals received and how the male, under various names, always used the same address. The conciliator did not, however, identify the male as Samson Omosefunmi. Similarly, the heading of the grand jury minutes names "John Doe" as opposed to Samson Omosefunmi.

On the same day, the grand jury indicted Samson A. Omosefumni[12] for four counts of larceny (Indictment 30070) and four counts of false representations (Indictment 30069). On October 8, 1992, with the assistance of counsel, petitioner pled guilty to these charges.

At the October 8, 1992 guilty plea hearing, petitioner swore under oath to the accuracy of the facts presented by the Commonwealth except for his ownership of certain motor vehicles. The Commonwealth identified Olutoyin Friday as the mother of petitioner's children. Petitioner was identified as holding excess assets, owning a home and also owning a business while receiving federal assistance. For example, petitioner held joint bank accounts with Friday with assets and five figure deposits during the relevant time period. Petitioner nevertheless reported no income or assets. He also admitted that he "cheated welfare."

Before accepting the pleas, the trial judge informed petitioner that, by pleading guilty, he was giving "up [his] absolute right to have a fair and impartial trial with or without a jury to determine [his] guilt or innocence." (Docket Entry # 18, Tr. 5–6). The trial judge also advised petitioner that by pleading guilty he was giving up the right to face his accusers and to question them and to introduce evidence on his behalf. In response to questions, petitioner denied being under the influence of drugs, medication or alcohol. Petitioner replied affirmatively to the trial judge's question about whether he had enough time to fully discuss the case and the consequences of pleading guilty with his attorney. Petitioner agreed that trial counsel had acted in his best interest and

The ALOFAR contains a similar ground of relief. Therein, petitioner presents an argument entitled "Evidence" based on the Commonwealth's presentation of a case based on "information from liars and crooks." The ALOFAR notes that petitioner questioned the relevance of introducing certain items of evidence and that the grand jury minutes did not name or charge petitioner with any crime. Thus, the ALOFAR raises the same factual basis as that presented in ground four. The legal basis for the claim in the ALOFAR, however, remains unclear. There is no reference to the privilege against self-incrimination. Rather, after noting that the Common-

wealth based its case on information from biased individuals who lacked credibility and that the grand jury minutes did not name or charge petitioner with a crime, the ALOFAR summarily refers to "fair play as the essence of due process" and that the prosecutors only alleged proof by a preponderance of the evidence.

11. Spelling is taken directly from the grand jury transcript.

12. The spelling is taken directly from the indictments. The appellate court's August 6, 1999 decision notes the spelling discrepancy.

had fairly represented him. As required under state law, the trial judge also informed petitioner of the indirect deportation consequences of his plea.

In written factual findings, the trial judge found that petitioner's plea. of guilty was made voluntarily of his own free will and with full knowledge of the consequences.[13] Accordingly, the trial judge accepted the plea.

The trial judge then sentenced petitioner to a term of three to five years on the larceny counts, each count to run concurrently. He suspended the sentence and placed petitioner on probation for the five year term with an order of restitution in the amount of $29,322.29.

Petitioner submitted a notice of appeal dated October 23, 1992. After the appellate court dismissed the appeal for want of prosecution, petitioner moved for reconsideration of the dismissal. After requiring additional filings, the appellate court reinstated the appeal.

Meanwhile, on October 5, 1993, petitioner was found to be in violation of probation and the suspended larceny sentence was invoked. Petitioner began serving the three to five year concurrent sentence on October 5, 1993, with an effective date of September 6, 1993.

In May 1996 petitioner filed a pro se motion to withdraw the guilty plea and for a new trial. The one paragraph motion sought relief based on a supporting affidavit.[14] In the motion, petitioner argued that his plea "was not voluntary or done in an understanding manner" and that he received ineffective assistance of counsel. An Associate Justice of the Superior Court Department who was not the trial judge denied the motion in a three page written decision in September 1996. In particular, she rejected petitioner's supporting affidavit as "nonsensical" and "incredible on its face."[15] Petitioner filed a notice of appeal from the denial of the new trial motion on September 23, 1996.

Petitioner's appellate brief raised five arguments. First, petitioner argued that he was under the influence of drugs when he pleaded guilty. Second, petitioner alleged that he received ineffective assistance of trial counsel because trial counsel should have been aware that petitioner was under the influence of drugs and that petitioner was not named or charged with any crime in the grand jury minutes. Third, petitioner maintained that the grand jury minutes were defective because they did not name or charge him with any crime. Fourth, petitioner challenged the guilty plea as not being voluntary and intelligent. Fifth, petitioner contended that the evidence was based on "liars and crooks."

On August 9, 1999, the appellate court affirmed the judgment for the reasons set forth in the Commonwealth's brief. On August 15, 1999, petitioner filed the ALOFAR with the SJC. The ALOFAR raised the following arguments: (1) ineffective assistance of trial counsel because he

---

**13.** Petitioner fails to rebut this factual finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**14.** In the affidavit, petitioner avers that his plea was not voluntary and that he did not understand the nature of the charges against him. The affidavit also states that the recitation of facts by the Commonwealth was not accurate and that he blindly followed the instructions of trial counsel. Petitioner further

attests that he was misinformed about the possible sentence he could receive and was under the influence of drugs.

**15.** Petitioner fails to rebut this factual finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). To the contrary, the transcript of the October 8, 1992 hearing fully supports the Associate Justice's finding.

should have been aware that the grand jury minutes did not name or charge petitioner with a crime; (2) defective grand jury minutes which did not name or charge petitioner with a crime; and (3) the Commonwealth based its case on information from "liars and crooks." On October 25, 1999, the SJC summarily denied the ALOFAR.

On July 15, 1994, petitioner was sentenced on insurance fraud charges for a minimum period of two years and six months and a maximum period of five years. The effective date of this sentence was "F & A # 1." (Docket Entry # 20, Ex. B; Docket Entry # 38, Ex. 2). Sentence number one is the larceny sentence. The maximum date for the larceny sentence is September 4, 1998. The larceny sentence therefore expired no later than September 4, 1998. Inasmuch as the July 1994 insurance fraud sentence ran from and after the larceny sentence, this court concludes that the July 1994 insurance fraud sentence was consecutive to the October 1992 larceny sentence. *See* Mass. Gen.L. ch. 279, § 8A.

On July 1, 1996, petitioner was released on parole on both sentences. Although the larceny sentence expired no later than September 1998, petitioner remained on parole on the insurance fraud sentence after the larceny sentence expired. The maximum sentence date for the insurance fraud sentence is June 29, 2001. Ordinarily, when the committed portion of an earlier sentence of a from and after sentence ends and the prisoner is released on parole, the later sentence commences. *See Crooker v. Massachusetts Parole Board Chairman*, 38 Mass.App.Ct. 915, 645

N.E.2d 698, 699 (Mass.1995); *Delisle v. Commonwealth*, 416 Mass. 359, 622 N.E.2d 601, 603 (1993).

Significantly, however, petitioner received statutory and earned good time credits of 637 days. Deducted from the latest maximum sentence date of the from and after insurance fraud sentence (June 29, 2001), the parole discharge date for this sentence was October 1, 1999. The from and after insurance fraud sentence therefore expired on October 1, 1999.

Petitioner filed an application to proceed in forma pauperis on November 29, 1999. It is dated November 19, 1999. The accompanying initial petition is signed and dated by petitioner on November 18, 1999.[16] The district court allowed the in forma pauperis application on December 8, 1999. The clerk docketed the petition on December 8, 1999. To state the obvious, none of these dates falls on or before the October 1, 1999 expiration of the insurance fraud sentence.

The Immigration and Naturalization Service ("INS") lodged a detainer against petitioner in September 1993 as a result of the October 1992 conviction. On September 30, 1999, the INS released petitioner on bail. He later returned to INS custody at an undetermined date. An order of deportation to Nigeria issued against petitioner in December 1999. INS intends to execute the outstanding deportation order against petitioner on or after May 2, 2001.

### DISCUSSION

#### I. *In Custody*

 Section 2254(a) directs a district judge to entertain section 2254 petitions

---

**16.** The address petitioner supplies at the time of filing is a street address in New Bedford, Massachusetts. Hence, it appears that petitioner was not incarcerated at the time he filed the initial petition. In any event, even applying the mailbox rule, the larceny and insurance fraud sentences had expired before petitioner signed the application and initial petition and deposited them in a prison mailbox.

only for persons "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3). The "in custody" determination is made at the time the section 2254 petition is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *United States v. Brown*, 1999 WL 1269197 at * 2 (N.D.Ill.Dec. 23, 1999) ("Supreme Court has repeatedly" stated habeas statute requires the petitioner to "be 'in custody' when the application for habeas corpus is filed"). Significantly, the Supreme Court interprets this statutory language as requiring that, at the time [a] petition is filed, the petitioner must be 'in custody' pursuant to the conviction or sentence he seeks to attack. *Young v. Vaughn*, 83 F.3d 72, 73 (3rd Cir.1996). With few exceptions inapplicable to the case at bar, a petitioner cannot lodge a direct attack on an expired conviction and sentence simply because he remains in custody under an enhanced sentence. *See Maleng v. Cook*, 490 U.S. 488, 489–490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *see also Lackawanna County District Attorney v. Coss*, 531 U.S. 923, —— – ——, 121 S.Ct. 1567, 1572–73, 149 L.Ed.2d 608 (2001).

■ It is true that parole as well as pretrial release on personal recognizance constitute sufficient restraints on a person's liberty to satisfy the "in custody" requirement of section 2254. *Lefkowitz v. Fair*, 816 F.2d 17, 19 (1st Cir.1987). Petitioner mailed and filed the initial petition, however, after the September 4, 1998 expiration of the larceny sentence. Moreover, the insurance fraud sentence cannot satisfy the "in custody" requirement. Although the Supreme Court views "consecutive sentences in the aggre-

gate" for purposes of an "in custody" analysis,[17] *Garlotte v. Fordice*, 515 U.S. 39, 45–47, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995), petitioner mailed and filed the initial petition after the October 1, 1999 discharge of his parole on the insurance fraud sentence.

■ The INS, however, is actively attempting to deport petitioner because of the October 1992 conviction. Such attempts constitute a sufficient restraint on petitioner's liberty to satisfy the "in custody" requirement. *See Hurtado v. Tucker*, 245 F.3d 7, 2001 WL 290343 at * 1 n. 2 (1st Cir. March 29, 2001). Respondent's custody argument is therefore unavailing.

## II. *Exhaustion and Independent and Adequate State Grounds*

Respondent next submits that the petition is mixed, *see Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), inasmuch as part of ground two is the only exhausted ground in the petition.

■ Exhaustion, a matter of comity, requires the petitioner to fairly present " 'the substance of his federal habeas claim to the state court before seeking federal review.' " *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir.1988). The burden the petitioner bears in fairly and recognizably presenting the factual and legal bases of his federal claim to the state courts is "heavy." *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir.1997); *see Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir.1994) ("a petitioner must inform the state court of both the factual and legal underpinnings of the claim"). Petitioner must not only present the factual and legal underpinnings of the federal claim to the state's highest court,

**17.** Respondent's attempts to limit the reach of the from and after larceny sentence on the basis that state law treats the sentences as consecutive simply for the purpose of holding

a single parole hearing is unconvincing. The sentences are consecutive under federal law within the meaning of *Garlotte* and its progeny.

*Adelson v. DiPaola*, 131 F.3d at 263; *Mele v. Fitchburg District Court*, 850 F.2d 817, 820 (1st Cir.1988); *Burbank v. Maloney*, 47 F.Supp.2d 159, 161 (D.Mass.1999), i.e., the SJC,[18] but he must do so " 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.' " *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir.2000).

■ The federal claim or "question must be plainly defined." *Martens v. Shannon*, 836 F.2d at 717. The correct focus "is one of probability; the trappings of a federal claim must be likely to put a reasonable jurist on notice of the claim." *Casella v. Clemons*, 207 F.3d at 21. Such " 'trappings,' " *Adelson v. DiPaola*, 131 F.3d at 262, include: " '(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution.' " *Scarpa v. DuBois*, 38 F.3d at 6 (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987)). Merely alleging lack of a fair trial or invoking the phrase "due process" without further explanation will not satisfy the fourth trapping without greater specificity. *See Nadworny v. Fair*, 872 F.2d 1093, 1097 (1st Cir.1989); *see also Adelson v. DiPaola*, 131 F.3d at 263. Finally, the fewer the trappings, the lower the probability that the petitioner will have alerted the reasonable jurist to the presence of a federal claim. *See Adelson v. DiPaola*, 131 F.3d at 262.

■ A fifth means of adequate presentment is to present the SJC with a state claim that is functionally equivalent to a federal claim. *Scarpa v. DuBois*, 38 F.3d at 7 (citing *Nadworny v. Fair*, 872 F.2d at 1097–1098). It is, however, "the petitioner [who] has the burden of demonstrating the clonal relationship of the federal and state claims which would have likely alerted the state tribunal to the federal nuances." *Nadworny v. Fair*, 872 F.2d at 1100.

■ In cases not involving first degree murder indictments, *see Commonwealth v. Burke*, 414 Mass. 252, 607 N.E.2d 991, 995 (1993) (employing more deferential ineffective assistance of counsel standard than that imposed by Sixth Amendment when reviewing first degree murder case), the standard of ineffective assistance of counsel in Massachusetts case law parallels the standard set forth under the Sixth Amendment. *See Scarpa v. DuBois*, 38 F.3d at 7 & n. 4 (finding ineffective assistance of counsel claim under Massachusetts law functionally equivalent to claim under federal law as set forth in three Massachusetts cases).

Ground two in the petition complains about the same deficiency of trial counsel as alleged in the ALOFAR, to wit, trial counsel's failure to advise petitioner that the grand jury minutes did not name or charge him with a crime. As explained in footnote number eight, petitioner fairly presented the federal nature of this claim to the SJC. Like the petitioner in *Scarpa*, petitioner sufficiently alerted the SJC to the factual and legal underpinnings of his constitutional ineffective assistance of

18. The ALOFAR therefore becomes the critical document for exhaustion analysis. *See Adelson v. DiPaola*, 131 F.3d at 263 ("the decisive pleading is the application for further appellate review"). "[A]n appealed issue cannot be considered as having been fairly represented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the ALOFAR." *Mele v. Fitchburg*, 850 F.2d at 820. Nevertheless, exclusive focus on the ALOFAR is, at times, inappropriate. *See Scarpa v. DuBois*, 38 F.3d at 7 n. 3.

counsel claim. *See, e.g., Scarpa v. DuBois,* 38 F.3d at 6–7. With the exception of the allegation that the conviction was obtained by a coerced confession,[19] ground two is exhausted. For reasons stated below, however, the SJC and appellate court's decisions did not result in a decision that was "contrary to" or involved an "unreasonable application" of clearly established federal law under 28 U.S.C. § 2254(d) ("section 2254(d)").

Similarly, with respect to ground three, the ALOFAR presents the claim in such a way as to alert a reasonable jurist on the SJC to the existence of a federal question. Petitioner presents the same factual underpinnings, to wit, failure of the grand jury minutes to name or charge him with a crime. Although the legal underpinnings of ground three are not entirely clear, as discussed in footnote number nine, this court construes ground three to raise the same legal claim petitioner presented to the appellate court and to the SJC given the similarity of language and petitioner's pro se status.[20] As presented to both the appellate court and the SJC and in ground three of the petition, petitioner claims that the grand jury minutes were defective because they did not name petitioner as Samson Omosefunmi or charge him with a crime sufficient to warrant an indictment thereby leading to his unlawful arrest and conviction in violation of the Fourth and Fifth Amendments. Ground three is therefore exhausted.

As discussed *infra* and in footnote number nine, however, the appellate court's decision rests on an independent and adequate state law ground. In addition, if the SJC reached the merits of the federal constitutional claim, its decision was not "contrary to" or an "unreasonable application" of clearly established federal law.

■ Turning to ground one in the petition, petitioner completely omitted this ground from the ALOFAR. The fact that a similar ground is contained in the appellate brief does not suffice for exhaustion purposes. *See, e.g., Mele v. Fitchburg District Court,* 850 F.2d at 822–823; *see also Scarpa v. DuBois,* 38 F.3d at 7 n. 3 (distinguishing *Mele*). Accordingly, ground one is not exhausted. In the alternative, for reasons stated *infra,* the trial judge's decision that the plea was knowing and voluntary did not result in a decision that was "contrary to" or involved an "unreasonable application" of clearly established federal law under section 2254(d).[21]

Likewise, ground four remains unexhausted. Petitioner did not present the legal underpinnings of the claim in such a way as to make it probable that a reasonable jurist would be alerted to the federal constitutional nature of the claim. The ALOFAR's reference to two constitutional buzzwords, fair trial and due process, is insufficient. *See Adelson v. DiPaola,* 131 F.3d at 263 ("we have regularly held ... that the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not" constitute fair presentment). The ALOFAR did not cite to the Constitution or to any of its provisions. It also failed to rely on any federal cases or state cases presenting federal constitutional law. No mention is made of the privilege against self-incrimination. Ground four is not exhausted.

In the alternative, even assuming that petitioner presented a federal constitution-

---

19. See footnote number eight.

20. See footnote number nine.

21. This court may recommend denial of the petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

al claim to the appellate court and to the SJC through the allegation of being denied a "fair trial," which this court doubts, the claim rests on an independent and adequate state law ground.[22] The SJC denied the ALOFAR and the appellate court affirmed the trial court for reasons stated in the Commonwealth's brief. The reasons stated in the Commonwealth's brief relative to this ground are that petitioner's "arguments are conclusory and he does not cite appropriate legal authority. *Commonwealth v. Taylor*, 32 Mass.App.Ct. 570, 580, 591 N.E.2d 1108 (1992). In addition, there is a lack of reasoned theory in [petitioner's] claims." (Docket Entry # 18, Ex. 3; citation of SJC case omitted). Both these state court cases stand for the principle that conclusory arguments raised in an appellate brief are waived under Rule 16(a)(4) ("Rule 16(a)(4)"), Mass.R.App.P. Massachusetts courts consistently reject conclusory arguments as waived under Rule 16(a)(4). *See, e.g., Kelley v. Neilson*, 433 Mass. 706, 716, 745 N.E.2d 952, 960 (2001) (vague references in appellate brief considered waived under Rule 16(a)(4)); *Vakil v. Anesthesiology Associates of Taunton, Inc.*, 51 Mass.App.Ct. 114, 744 N.E.2d 651, 656 (2001) (failure to include argument in appellate brief constitutes waiver under Rule 16(a)(4)); *Commonwealth v. Lameire*, 50 Mass.App.Ct. 271, 737 N.E.2d 469, 475 (2000), *review denied*, 433 Mass. 1102, 742 N.E.2d 81 (2001); *Commonwealth v. Russo*, 49 Mass.App.Ct. 579, 731 N.E.2d 108, 113 (2000) (speculative and conclusory allegations rejected under Rule 16(a)(4)), *review denied*, 432 Mass. 1108, 737 N.E.2d 468 (2000).

■ A long standing rule bars federal courts from reviewing state court decisions that rest on "independent and ade-

quate state ground[s]." *Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997); *see also Torres v. Dubois*, 174 F.3d 43, 45–46 (1st Cir.), *cert. denied*, 528 U.S. 898, 120 S.Ct. 231, 145 L.Ed.2d 194 (1999). Stated otherwise, federal habeas review is generally precluded "when a state court has reached its decision on the basis of an adequate and independent state-law ground." *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir.1995). Independent and adequate state grounds exist where "the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement." *Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir.1997). In such a case, "[c]onsiderations of comity and federalism bar the federal court's review." *Brewer v. Marshall*, 119 F.3d at 999.

■ Petitioner can avoid dismissal in one of three ways. First, there is a presumption of waiver where the state decision "fairly appears to rest primarily on federal law or to be interwoven with such law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The presumption, however, "does not apply where, as here, there is no 'clear indication that the state court rested its decision on federal law.' " *Brewer v. Marshall*, 119 F.3d at 1000 (internal bracket omitted); *Coleman v. Thompson*, 501 U.S. at 739–740, 111 S.Ct. 2546. The appellate court stated that it was affirming the judgment for reasons stated in the Commonwealth's brief which, in turn, relied exclusively on state law.

---

**22.** It is permissible to address procedural default *sua sponte*. *See Ortiz v. Dubois*, 19 F.3d 708, 714–715 (1st Cir.1994). Respondent raises the defense in its answer but not in the motion to dismiss.

■ Second, petitioner can demonstrate there was "cause" for the default and "actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. 2546. "Faced by a state-court judgment that rests upon an adequate and independent state ground, a habeas petitioner has the burden of proving both cause and prejudice." *Burks v. Dubois*, 55 F.3d at 716. As to cause, ordinarily the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." [23] *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *accord Burks v. Dubois*, 55 F.3d at 716–717 (citing *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639); *Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir.1994) (quoting *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639). No external or objective factor prevented petitioner from providing a more specific and coherent explanation of the argument. Petitioner fails in his burden of showing cause. Inasmuch as petitioner fails to show cause, this court need not address the prejudice prong. *See Magee v. Harshbarger*, 16 F.3d at 472 (declining to address prejudice prong "[b]ecause the cause and prejudice requirement is conjunctive"); *see also Burks v. Dubois*, 55 F.3d at 716 n. 3 (not addressing prejudice prong because court found no cause).

■ Third, notwithstanding the absence of cause, a federal habeas court may proceed to address the merits and grant the writ "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2639; *see Burks v. Dubois*, 55 F.3d at 717–718.

Petitioner's assent to the accuracy of the facts presented by the Commonwealth at the guilty plea hearing as well as his admission that he "cheated welfare" belie any showing of actual innocence. Moreover, a defendant cannot challenge a grand jury indictment on the basis of insufficient evidence. *See Costello v. United States*, 350 U.S. 359, 361–362, 76 S.Ct. 406, 100 L.Ed. 397 (1956). "[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Costello v. United States*, 350 U.S. at 362, 76 S.Ct. 406. "[A]n indictment valid on its face is not open to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citation omitted). Petitioner's reliance on the deficiencies of the grand jury minutes is misplaced and he fails in his burden of demonstrating a miscarriage of justice. Ground four is subject to dismissal.

■ The same is true with respect to ground three. As discussed in footnote nine, the appellate court's decision rests on an independent and adequate state law ground. There is no presumption that the court reached the federal issue because the Commonwealth's brief, which the appellate court relied on for its reasons, does not mention or even allude to federal constitutional law. Petitioner fails to show "cause" as to why he could not have raised the issue of the deficiencies of the grand jury minutes as a basis for dismissing the indictment in a pretrial motion. Indeed,

**23.** For example, two such objective impediments consist of "showing that the factual or legal basis for the claim was not reasonably available to counsel or that some interference

by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639 (citations and internal quotation marks omitted).

petitioner or his trial counsel received a copy of the grand jury minutes prior to the plea changes. Furthermore, "trial counsel inadvertence does not constitute 'cause.'" *Tart v. Commonwealth of Massachusetts,* 949 F.2d 490, 497 (1st Cir.1991). Finally, there is no miscarriage of justice. As already discussed, "[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Costello v. United States,* 350 U.S. at 362, 76 S.Ct. 406. To the extent the SJC's decision does not rest on independent and adequate state law grounds,[24] it fails on the merits under section 2254(d).

### III. *Section 2254(d)*

Turning to grounds one, two and three, section 2254(d) bars federal habeas relief. Section 2254(d)(1)[25] establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the first category, a federal court may grant the writ if the relevant state court decision was " 'contrary to clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor,* 529 U.S. at 404, 120 S.Ct. 1495 (quoting statute with ellipses omitted). Under the second category, the federal court may grant the writ if the relevant state court decision " 'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor,* 529 U.S. at 405, 120 S.Ct. 1495 (quoting statute with ellipses omitted).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court, if the decision "applied a rule that contradicts the governing law set forth in the [Supreme] Court's cases." *Mountjoy v. Warden, New Hampshire State Prison,* 245 F.3d 31, 35 (1st Cir.2001). A state court decision is also "contrary to the [Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from our precedent." *Hurtado v. Tucker,* 245 F.3d 7, 15–16 (1st Cir.2001) (internal bracket omitted). Thus, a state court decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court "or if it reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts." *Ramdass v. Angelone,* 530 U.S. 156, 165, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *accord Williams v. Taylor,* 529 U.S. at 405–406, 120 S.Ct. 1495 (contrary decision occurs where state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent"). In short, a petitioner "may succeed under the 'contrary to' clause only if Supreme Court caselaw directly governs the claim and the state court got it wrong." *Vieux v. Pepe,* 184 F.3d 59, 63 (1st Cir. 1999), *cert. denied,* 528 U.S. 1163, 120 S.Ct. 1178, 145 L.Ed.2d 1086 (2000).

Under the second prong, the court determines whether the state court deci-

---

**24.** See footnote number nine.

**25.** Section 2254(d)(2) provides an alternate avenue for obtaining habeas relief but does not apply to the framework-type claims raised by petitioner.

sion was "an unreasonable application of clearly established Supreme Court jurisprudence." *O'Brien v. Dubois*, 145 F.3d at 25. The "touchstone [is] 'objective unreasonableness.'" *Ballinger v. Byron*, 98 F.Supp.2d 119, 126 (D.Mass.2000) (discussing *Taylor*). Thus, in "making the 'unreasonable application' inquiry," a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 365, 120 S.Ct. 1495. An "unreasonable application" of clearly established federal law as determined by the Supreme Court occurs where " 'the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Mountjoy v. Warden, New Hampshire State Prison*, 245 F.3d 31, 35 (1st Cir. 2001).

An objectively unreasonable application of the relevant jurisprudence, however, differs from an incorrect or erroneous application of such jurisprudence. *Williams v. Taylor*, 529 U.S. at 365, 120 S.Ct. 1495. Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must *also* be unreasonable." *Williams v. Taylor*, 529 U.S. at 365, 120 S.Ct. 1495 (emphasis added); *see Mountjoy v. Warden, New Hampshire State Prison*, 245 F.3d 31, 2001 WL 303059 at * 3 (1st Cir. April 3, 2001) (distinguishing unreasonable

application from incorrect application); *Williams v. Matesanz*, 230 F.3d 421, 425 (1st Cir.2000).

Applying this standard to the first ground in the petition and the trial judge's determination that the plea was "made voluntarily of the defendant's free will and with full knowledge of its consequences," (Docket Entry # 18, Findings on Plea of Guilty), petitioner is not entitled to habeas relief. In order for a plea to satisfy the Constitution, the plea must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (reversible error for "trial court to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary"). A plea is not voluntary "unless the defendant received 'real notice of the true nature of the charges against him.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). To constitute a voluntary guilty plea, the defendant must also be " 'fully aware of the direct consequences' " of the plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

In the case at bar, the trial judge correctly gaged the relevant rule given his use of the words "voluntarily" and "with full knowledge." He also correctly applied this standard by finding that petitioner's plea was knowing and voluntary. The trial judge informed petitioner of the direct consequences of the plea as well as the indirect immigration consequences of the plea. He inquired about petitioner's state of mind and whether he had taken any medications, drugs or alcohol prior to the proceeding. The trial judge implicitly concluded there was a sufficient basis for the larceny indictment. The fact that the trial judge did not inform petitioner that the grand jury minutes did not name or charge him with a crime is, simply put, not

an "unreasonable application" of this federal law as determined by the Supreme Court.

Turning to the second ground in the petition and the alleged ineffective assistance of counsel, petitioner's appellate brief argued, in part, that trial counsel's performance fell below a level of competence normally demanded of criminal defense attorneys because the grand jury minutes did not name or charge petitioner with a crime. The appellate court affirmed the judgment based on the Commonwealth's brief and the SJC denied the ALOFAR.

Neither the appellate court's decision nor the decision of the SJC was "contrary to" clearly established federal law as determined by Supreme Court cases. The rule set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), qualifies as clearly established law as determined by the Supreme Court. *See Phoenix v. Matesanz*, 233 F.3d 77, 81 (1st Cir.2000) (quoting *Williams v. Taylor*, 529 U.S. at 390, 120 S.Ct. 1495). It also applies to plea proceedings. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The *Strickland* test has two components.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Phoenix v. Matesanz*, 233 F.3d at 81 (1st Cir.2000) (quoting *Williams v. Taylor*, 529 U.S. at 390, 120 S.Ct. 1495, quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Phoenix v. Matesanz*, 233 F.3d at 81 (quoting *Williams v. Taylor*, 529 U.S. at 390–391, 120 S.Ct. 1495, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). In the context of plea proceedings, the prejudice component requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366.

■■■ The Commonwealth's brief argued that petitioner failed to demonstrate that trial counsel was ineffective or that his conduct fell measurably below the behavior expected from an ordinary fallible lawyer.[26] The appellate court's decision affirming the judgment and the SJC's denial of the ALOFAR were not "contrary to" the first component of *Strickland*. Trial counsel's performance did not fall below an objective standard of reasonableness. As already explained, the fact that the grand jury minutes did not name or charge petitioner with a crime does not provide petitioner with a defense or warrant dismissal of the indictment. *See United States v. Calandra*, 414 U.S. at 345, 94 S.Ct. 613; *Costello v. United States*, 350 U.S. at 362, 76 S.Ct. 406. Consequently, trial counsel's failure to inform petitioner of the "deficiencies" of the grand jury minutes does not constitute ineffective assistance of counsel under the Sixth Amendment. The appellate court's determination as well as the SJC's denial of the ALOFAR was constitutionally correct. Neither decision was

---

26. As previously noted, the state standard for ineffective assistance of counsel generally parallels the *Strickland* standard. *See Scarpa v. DuBois*, 38 F.3d at 7 & n. 4.

"contrary to" the *Strickland* standard or an "unreasonable application" of the *Strickland* standard.

 Turning to the third ground in the petition, the SJC denied the ALOFAR and rejected the argument therein that the grand jury minutes did not name or charge petitioner with a crime requiring dismissal of the indictment as in violation of the Fourth and Fifth Amendments. The SJC's decision was neither "contrary to" or an "unreasonable application" of clearly established federal law as determined by the Supreme Court. First, it was clearly established law that the Fourth Amendment's exclusionary rule did not extend to grand jury proceedings and that a grand jury could receive hearsay evidence. *See United States v. Williams,* 504 U.S. 36, 50, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (discussing *United States v. Calandra,* 414 U.S. at 349, 94 S.Ct. 613). Second, it was readily apparent that petitioner had no claim under the Fifth Amendment. Under the Fifth Amendment, "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States,* 350 U.S. at 362, 76 S.Ct. 406; *accord United States v. Williams,* 504 U.S. at 49, 112 S.Ct. 1735; *United States v. Calandra,* 414 U.S. at 345, 94 S.Ct. 613. The SJC, in rejecting petitioner's Fourth and Fifth Amendment arguments, did not apply a rule that contradicted the aforementioned well-established law regarding grand jury proceedings. Nor is the SJC's decision, to

the extent the SJC applied these governing rules regarding grand juries, an unreasonable application of this law. To the contrary, the decision was entirely correct.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[27] that the motion to dismiss (Docket Entry # 16) be **ALLOWED** and that the petition be dismissed.

April 30, 2001.

---

**27.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).